```
-----------------------------x
                             :
STACEY ELIZABETH MALTZ       :     Civ. No. 3:18CV00775(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :
COMMISSIONER, SOCIAL         :
SECURITY ADMINISTRATION[1]   :     August 16, 2019
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Stacey Elizabeth Maltz ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff has moved to reverse or remand the Commissioner's decision. [Doc. #22]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #25].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner and/or

---

[1] Andrew M. Saul was confirmed as Commissioner of the Social Security Administration on June 4, 2019. He is now the proper defendant. See Fed. R. Civ. P 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

Remanding the Matter for Further Proceedings **[Doc. #22]** is **GRANTED**, to the extent plaintiff seeks a remand for further proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #25]** is **DENIED**.

I.   <u>**PROCEDURAL HISTORY**</u>[2]

Plaintiff protectively filed concurrent applications for DIB and SSI on October 7, 2014, alleging disability beginning August 4, 2014. <u>See</u> Certified Transcript of the Administrative Record, Doc. #10, compiled on June 27, 2018, (hereinafter "Tr.") at 280-95. Plaintiff's applications were denied initially on May 6, 2015, <u>see</u> Tr. 149-58, and upon reconsideration on September 21, 2015. <u>See</u> Tr. 161-78.

On November 30, 2016, plaintiff, represented by Attorney Richard Grabow, appeared and testified by videoconference at a hearing before Administrative Law Judge ("ALJ") Edward F. Sweeney. <u>See generally</u> Tr. 43-68. Vocational Expert ("VE") Richard Hall appeared and testified by telephone at the administrative hearing. <u>See</u> Tr. 68-74; <u>see also</u> Tr. 373. Tommy Crutchfield, a friend of the plaintiff, also appeared and testified by videoconference at this hearing. <u>See</u> Tr. 75-88. On March 31, 2017, the ALJ issued an unfavorable decision. <u>See</u> Tr.

---

[2] Simultaneously with her motion, plaintiff filed the parties' Stipulation of Facts. [Doc. #22-2]. That Stipulation was filed pursuant to the Standing Scheduling Order – Social Security Case then in effect. <u>See</u> Doc. #4 at 2-3.

9-29. On March 8, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's March 31, 2017, decision the final decision of the Commissioner. See Tr. 1-8. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review and now moves to reverse the decision of the Commissioner and/or to remand for further administrative proceedings. [Doc. #22]. On appeal, plaintiff argues: (1) the ALJ failed to follow the treating physician rule; (2) the Residual Functional Capacity ("RFC") determination is not supported by substantial evidence; and (3) the ALJ failed to develop the administrative record. See generally Doc. #22-1 at 11-21. For the reasons stated below, the Court finds that the ALJ erred in his application of the treating physician rule.

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is

more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court]

to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir.

2012) (quoting _Lamay v. Comm'r of Soc. Sec._, 562 F.3d 503, 507 (2d Cir. 2009)).

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." _Smith v. Comm'r_, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" _Rodriguez v. Colvin_, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); _White v. Comm'r_, No. 17CV4524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The RFC is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability within the meaning of the Social Security Act from August 4, 2014, through the date of" his decision, March 31, 2017. Tr. 13. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 4, 2014. See Tr. 15. At step two, the ALJ found that plaintiff had the severe impairments of fibromyalgia, sleep apnea, and Kleine-Levin syndrome. See id. The ALJ found plaintiff's asthma and depression to be non-severe impairments. See Tr. 15-16.

At step three, the ALJ determined that plaintiff's impairments, either alone or in combination, did not meet or

medically equal the severity of any of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. See Tr. 17. As to plaintiff's "sleep disorders," the ALJ "determined that the [plaintiff's] impairments do not, singly or in combination, meet the requirements of any listing described in listings 3.00, 11.00, or 14.00." Id. As to plaintiff's fibromyalgia, the ALJ "determined that the [plaintiff's] impairments do not, singly or in combination, meet the requirements of any listing described in listing 14.00" and also "considered the requirements outlined in SSR 12-2p." Id. The ALJ next found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can frequently climb ramps and stairs. The claimant can never climb ladders, ropes, and scaffolds. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant would need to avoid exposure to unprotected hazards such as machinery and heights.

Tr. 17. At step four, the ALJ concluded that plaintiff was unable to perform her past relevant work as a respiratory therapist. See Tr. 22-23. At step five, and after considering plaintiff's age, education, work experience and RFC, as well as the testimony of the VE, the ALJ found that other jobs existed in significant numbers in the national economy that plaintiff could perform. See Tr. 23-24.

## V.  **DISCUSSION**

Plaintiff's arguments in support of reversal and/or remand focus primarily on what appears to be the ALJ's fundamental

misunderstanding of her Kleine-Levin syndrome ("KLS"), a rare sleep disorder.[3] Because the symptomology of that disorder informs the Court's analysis of the issues presented, the Court pauses to note the symptomology of KLS, as cited by plaintiff.

KLS is described as

> a rare and complex neurological disorder characterized by recurring periods of excessive amounts of sleep, altered behavior, and a reduced understanding of the world. ... At the onset of an episode the patient becomes progressively drowsy and sleeps for most of the day and night (hypersomnolence), sometimes waking only to eat or go to the bathroom.

Doc. #22-1 at 12 (citing What is KLS?, Kleine Levin Syndrome Foundation, https://klsfoundation.org/what-is-kleine-levin-syndrome/). Importantly, KLS "episodes are cyclical[,]" and symptoms can "persist for days, weeks or even months, during which all normal activities stop. Individuals are not able to attend school, work or care for themselves. Most are bedridden, tired and uncommunicative even when awake." Id. at 12-13. Symptoms of KLS may "reappear with little warning[,]" and "between episodes, those diagnosed with KLS appear to be in perfect health with no evidence of behavioral or physical dysfunction." Id. at 13.

---

[3] KLS is so rare that the Court's independent legal research revealed just three Westlaw case citations mentioning the condition.

Plaintiff raises several arguments in support of reversal or remand, the most compelling of which is that the ALJ failed to provide good reasons for discounting the opinions of plaintiff's treating physicians. The Court begins its analysis there.

A.   Applicable Law

"The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant," Green-Younger, 335 F.3d at 106. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20 C.F.R. §§404.1527(c), 416.927(c). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2).[4]

When weighing any medical opinion, treating or otherwise, the Regulations require that the ALJ consider the following

---

[4] As previously noted, some Regulations applicable to the review of medical source evidence were amended effective March 27, 2017. Those new Regulations do not apply to this case. See Section II, supra.

factors: length of treatment relationship; frequency of
examination; nature and extent of the treatment relationship;
relevant evidence used to support the opinion; consistency of
the opinion with the entire record; and the expertise and
specialized knowledge of the treating source. See 20 C.F.R.
§§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling
("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR
06-03P, 2006 WL 2329939, at *3-4 (S.S.A. Aug. 9, 2006). The
Second Circuit does not, however, require a "slavish recitation
of each and every factor [of 20 C.F.R. §§404.1527(c),
416.927(c)] where the ALJ's reasoning and adherence to the
regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70
(2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32
(2d Cir. 2004) (per curiam)).

   B.   Analysis

   Plaintiff asserts that the ALJ's reasons for discounting
her treating physicians' opinions are "counterintuitive" because
the ALJ "cites symptoms characteristic of KLS in support of his
assignment of little weight." Doc. #22-1 at 15. Defendant
responds that the ALJ properly gave little weight to the
opinions of plaintiff's treating physicians, Dr. Shoup and Dr.
Rosenthal. See generally Doc. #25-1 at 4-8.

   Neither Dr. Shoup nor Dr. Rosenthal provided the sort of
function-by-function opinion that is typically seen in a Social

Security record. Rather, each provided a narrative statement concerning plaintiff's ability to maintain employment. See Tr. 624, Tr. 382. The Court turns first to the weight afforded to the opinion of Dr. Shoup.

### 1. Dr. Shoup

On August 16, 2010, Dr. Shoup saw plaintiff for a follow-up visit, during which plaintiff reported experiencing "another protracted sleep episode[.] ... She thinks it lasted 18 to 20 hours." Tr. 623. At the conclusion of the treatment note summarizing plaintiff's August 16, 2010, visit, Dr. Shoup stated that plaintiff "is usually normal for about 2 weeks between episodes. It should be fine for her to work between episodes, but impossible to work during episodes. She has already discussed temporary disability at work." Tr. 624. The ALJ afforded Dr. Shoup's "opinion" little weight because:

> Overall, Dr. Shoup's opinions are inconsistent with the medical evidence of record as a whole, which showed that the claimant experienced some symptoms of fatigue, sleepiness, body pain, tenderness, and weakness from her conditions but the record also showed her fibromyalgia improved with physical therapy, that she generally had normal physical examination findings without signs of fatigue or sleepiness, that she exercised regularly and cleaned, and showed that she was non-compliant with her CPAP treatment, which strongly suggests her sleep-related symptoms were not as limiting as alleged[.] The evidence does not support Dr. Shoup's opinions. Further, Dr. Shoup's opinions are from well-outside of the relevant period and are inconsistent with the claimant's documented ability to work at this time[.]

Tr. 21 (citations to the record omitted).

Defendant contends that the ALJ properly afforded little
weight to the opinion of Dr. Shoup because Dr. Shoup did not
provide a "detailed functional capacity assessment but merely
stated that, 'it should be fine for [Plaintiff] to work between
episodes but impossible to work during episodes.'" Doc. #25-1 at
5 (citing Tr. 624). The ALJ did not, however, give that reason
for assigning little weight to Dr. Shoup's opinion. The Court
cannot accept "appellate counsel's <u>post</u> <u>hoc</u> rationalizations for
agency action." <u>Snell v. Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999)
(citation and internal quotation marks omitted); <u>accord</u> <u>Cottrell</u>
<u>v. Colvin</u>, 206 F. Supp. 3d 804, 809 (W.D.N.Y. 2016) ("[T]he
Commissioner's argument fails because she may not substitute her
own rationale when the ALJ failed to provide one."").
Nevertheless, defendant's argument is not compelling. First, the
very nature of KLS does not lend itself to a function-by-
function assessment. As is readily demonstrated by the evidence
of record, plaintiff is generally unable to function while
suffering from a KLS attack. <u>See</u> Tr. 54, Tr. 80, Tr. 416, Tr.
436, Tr. 623. Thus, it is not clear how a functional assessment
would be useful in these circumstances. Second, Dr. Shoup did
not opine that plaintiff was disabled or completely unable to
work. Rather, he stated that plaintiff would be unable to work

during a KLS episode. See Tr. 624. Accordingly, defendant's point in that regard is misplaced.

Defendant next contends that the ALJ properly assigned little weight to Dr. Shoup's opinion because it was issued four years before plaintiff's onset date. See Doc. #25-1 at 5. Plaintiff asserts that "the date of the opinion is of no import, as Dr. Shoup is essentially stating that a person who is sleeping most or all of the day, is largely unaware of their surroundings, and acting in a childlike state, is incapable of working during such a period. This is true in 2010, or 2018 or in fact at any time whatsoever." Doc. #22-1 at 17.

"[T]he timing of a treating physician's report is plainly relevant to the ALJ's determination of the weight, if any, to give it[.]" Mura v. Colvin, No. 16CV6159(MWP), 2017 WL 2543939, at *5 (W.D.N.Y. June 13, 2017). "Although opinions from physicians who did not treat the claimant during the relevant time period are not entitled to controlling weight, such opinions may be entitled to significant weight[.]" Id. Assignment of significant weight to Dr. Shoup's opinion could be warranted where, as here, Dr. Shoup consistently treated plaintiff for the four years immediately preceding her alleged onset date. Indeed, Dr. Shoup last examined plaintiff just six months before her alleged onset date, and continued the treatment relationship until August 6, 2014, two days after her

alleged onset date. See Tr. 411, Tr. 413. There is nothing of
record to suggest that plaintiff's condition changed
significantly after Dr. Shoup rendered his opinion or last
treated plaintiff. Indeed, this opinion is largely consistent
with that authored by Dr. Rosenthal in February 2017. See Tr.
382. Thus, although Dr. Shoup's opinion may not be entitled to
controlling weight, it is likely entitled to significant weight
given his treatment history with plaintiff and its consistency
with the only other treating physician opinion of record. See
Mura, 2017 WL 2543939, at *5; Tricarico v. Colvin, No.
14CV2415(RRM), 2015 WL 5719696, at *7 (E.D.N.Y. Sept. 28,
2015) (ALJ gave significant weight to the treating physician
opinion "even though this opinion was completed before the
claimant's alleged onset date, because he concluded that the
record did not show any significant change in [claimant's]
condition since the last time [the physician] examined him."),
aff'd, 681 F. App'x 98 (2d Cir. 2017). It is not apparent that
the ALJ considered the length of Dr. Shoup's treatment
relationship with plaintiff or whether her condition
significantly changed since the date of Dr. Shoup's opinion when
determining the weight to afford to Dr. Shoup's opinion. This
too was error. See, e.g., Estrella v. Berryhill, 925 F.3d 90,
96-97 (2d Cir. 2019).

Defendant next argues that the ALJ properly assigned little weight to Dr. Shoup's opinion because it is inconsistent with plaintiff's work history, which "reflect[ed] that she was gainfully employed as a respiratory therapist from May 2006 until August 2014 – during Dr. Shoup's entire course of treatment." Doc. #25-1 at 5. Defendant further contends: "In light of Plaintiff's work history, Dr. Shoup's claim that she was unable to work was not compelling evidence." Id. Plaintiff asserts that the ALJ's finding based on plaintiff's work history is incorrect given other evidence of record reflecting that plaintiff was working a part time schedule in an accommodated work environment. See Doc. #22-1 at 17.

At the administrative hearing, plaintiff testified in response to questioning by her attorney:

Q: And how many years have you been experiencing these [KLS] symptoms?

A: For I want to say about six years on average.

Q: And did you work for a number of years with those symptoms?

A: I -- I tried.

Q: And what happened?

A: It was either I would run out of FMLA or I'd just -- if I did go in and work, I'd be sent home because I just

couldn't compute anything I was so out of it. I'd be

falling asleep at work.

...

Q: Now was there -- during your last 24/36 months, did your

schedule change with your employer?

A: Yes.

Q: And how so did it change?

A: I originally was hired for three 12-hour shifts and I

was cut down to eight-hour shifts -- about 20 to 24 hours a

week, no more than two consecutive days in a row.

Q: And were those limitations ... established by a

physician for you?

A: Yes.

Q: And who established those limitations?

A: Dr. Shupe (sic).

Q: Okay. And what was -- if you know, what was the basis

for establishing those limitations in your employment?

A: To see if that helped cut down the episodes, see if it

was a trigger for the episodes and to hopefully cut them

down.

Q: And was it effective?

A: No. No.

Tr. 55, Tr. 65-66. Plaintiff's testimony is confirmed by other

evidence of record, including plaintiff's work history report.

<u>See</u> Tr. 335 (plaintiff worked eight hours per day, two days per week as a respiratory therapist). Dr. Shoup's treatment records also state that plaintiff "should continue limiting work to maximum of 2 days in a row with at least one day between." Tr. 627; <u>see also</u> Tr. 628 (same). She also reported to Dr. Shoup that she had "been sent home from work because she seems 'out of it' and cannot concentrate." Tr. 623. Neither the ALJ nor defendant acknowledged those limitations, but rather assumed plaintiff was able to maintain a normal work schedule leading to, and throughout, the relevant time period. The record, and plaintiff's testimony, belie those assumptions. Indeed, "[i]t is clear from the record that an integral part of her alleged disability involves the unpredictable and intermittent nature of her attacks." <u>Rosato v. Barnhart</u>, 352 F. Supp. 2d 386, 397 (E.D.N.Y. 2005).[5] Thus, the purported inconsistency of Dr. Shoup's opinion with plaintiff's work history was not a good reason to assign Dr. Shoup's opinion little weight.

---

[5] Additionally, it is not clear that the ALJ properly assessed plaintiff's credibility, in light of what appears to be his misunderstanding of KLS. <u>See</u> Tr. 20. In that regard, "[a]lthough the ALJ acknowledged that the plaintiff's symptoms with respect to [KLS] occurred intermittently, instead of considering that fact as something to be expected when reviewing a claim involving [KLS] and taking that factor into account as part of the analysis, the ALJ concluded that the fact that the plaintiff's symptoms occurred intermittently undermined the credibility of the plaintiff's reports about her symptoms." <u>Mead v. Colvin</u>, No. 3:15CV1331(AWT), 2017 WL 1134393, at *2 (D. Conn. Mar. 27, 2017).

Defendant asserts that the ALJ properly assigned Dr. Shoup's opinion little weight because it was inconsistent with the medical record as a whole. See Doc. #25-1 at 6. However, this is the aspect of the ALJ's reasoning that is the most troublesome. The ALJ found inconsistency between Dr. Shoup's opinion and the record, which he said "showed her fibromyalgia improved with physical therapy, that she generally had normal physical examination findings without signs of fatigue or sleepiness, that she exercised regularly and cleaned, and showed that she was non-compliant with her CPAP treatment, which strongly suggests her sleep-related symptoms were not as limiting as alleged[.]" Tr. 21.

It is difficult to understand how the improvement of plaintiff's fibromyalgia symptoms would contradict Dr. Shoup's opinion concerning plaintiff's sleep disorder. It appears that the ALJ conflated plaintiff's fibromyalgia with her KLS. Further, the ALJ's reasoning regarding plaintiff's normal physical examinations without signs of fatigue or sleepiness demonstrates a fundamental misunderstanding of KLS. A similar confusion is revealed by the ALJ's statement that plaintiff's non-compliance with her CPAP "strongly suggests her sleep-related symptoms were not as limiting as alleged." Tr. 21. Indeed, the record demonstrates that when plaintiff was not suffering from KLS, she generally appeared in good health. See

Tr. 415, Tr. 419, Tr. 423, Tr. 427, Tr. 623, Tr. 626, Tr. 631 ("Reports normal alertness and function between episodes[]"); Tr. 623 ("She reports that she is normally cheery, happy and active between episodes[.]"). Plaintiff testified to that fact. See Tr. 66. However, when in the midst of a KLS episode, plaintiff is rendered largely incapacitated. See, e.g., Tr. 80, Tr. 416, Tr. 623. These descriptions of plaintiff comport with the description of KLS recited above, relied upon by plaintiff in her briefing, and provided to the ALJ during the course of the administrative proceedings. See Tr. 375. Thus, plaintiff's normal physical examinations, each presumably conducted while plaintiff was not suffering from a KLS episode, do not undermine Dr. Shoup's opinion.

"Finally, there is no indication in the record that the ALJ considered the fact that Dr. [Shoup] is a specialist in deciding to afford limited weight to his opinion. Remand is warranted when the ALJ has not indicated what weight, if any, was assigned based on the fact that the medical opinion was from a specialist." Barrett v. Berryhill, 286 F. Supp. 3d 402, 428 (E.D.N.Y. 2018). The ALJ gave little weight to the opinion of Dr. Shoup, who specializes in the area of sleep medicine and is a fellow with the American Board of Sleep Medicine. See, e.g.,

Tr. 623.[6] By contrast, the ALJ assigned "significant weight to the findings of the State agency consultants" who did not examine plaintiff and are not specialists in the field of sleep medicine. Tr. 20. "An ALJ should 'generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.'" Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 508 (S.D.N.Y. 2014) (quoting 20 C.F.R. §§404.1527(c)(5), 416.927(c)(5)). That conclusion would seem even more compelling where a patient, such as the plaintiff, suffers from a rare disorder. Here, "the ALJ did not explicitly consider whether the treating physician is a specialist in order to override the opinion of that treating physician." Id. (citation and internal quotation marks omitted). "Thus, the ALJ's failure to consider that Dr. [Shoup] is a specialist, particularly in light of the fact that the ALJ gave more weight to [the State agency consultants'] opinion[s], requires remand." Barrett, 286 F. Supp. 3d at 429; see also Estrella, 925 F.3d at 96-97.

Thus, for the reasons stated, the ALJ failed to provide good reasons for assigning little weight to Dr. Shoup's opinion. Indeed, the "failure of the ALJ's opinion to reflect an understanding of the nature of the plaintiff's [KLS] raises

---

[6] The name of the practice where Dr. Shoup provides services is called "Sleep Medicine Associates, LLC." Tr. 623.

substantial questions with respect to the weight given by the ALJ to the non-examining and examining medical sources." <u>Mead</u>, 2017 WL 1134393, at *2.

    2.  *Dr. Rosenthal*

Plaintiff also contends that the ALJ failed to provide good reasons for assigning little weight to the February 14, 2017, opinion of Dr. Mark J. Rosenthal. <u>See</u> Doc. #22-1 at 16. Defendant responds that the ALJ properly assigned little weight to Dr. Rosenthal's opinion. <u>See</u> Doc. #25-1 at 6-7.

Dr. Rosenthal provided the following narrative opinion, based on his "personal examination of Ms. Maltz as well as a thorough review of her medical records[:]"

> She has a medical history of hypersomnia consistent with
> Kleine-Levin syndrome (KLS). This is characterized by
> recurrent episodes of hypersomnia, altered behavior, and
> cognitive dysfunction, often lasting weeks to months at
> a time. There is no predictability as to the onset and
> frequency of these spells. During these spells all
> normal daily activity stops. The condition can last 10
> years or longer. Based on this diagnosis she would not
> be able to report to work on a consistent basis and would
> be considered unemployable.

Tr. 382.

The ALJ's reasons for discounting Dr. Rosenthal's opinion are similar to those offered to discount the opinion of Dr. Shoup:

> Overall, Dr. Rosenthal's opinions are inconsistent with
> the medical evidence of record as a whole, which showed
> that the claimant experienced some symptoms of fatigue,
> sleepiness, body pain, tenderness, and weakness from her

conditions but the record also showed her fibromyalgia improved with physical therapy, that she generally had normal physical examination findings without signs of fatigue or sleepiness, that she exercised regularly and cleaned, and showed that she was non-compliant with her CPAP treatment, which strongly suggests her sleep-related symptoms were not as limiting as alleged[.] This evidence does not support the level of limitation opined here. Moreover, although he is a treating source, Dr. Rosenthal had only been treating the claimant for a month at the time he rendered his opinion as he began treating her in January 2017[.] This significantly reduces the value of Dr. Rosenthal's conclusions. Further, Dr. Rosenthal's opinions heavily rely on the claimant's subjective complaints and he failed to support his opinions with objective medical evidence, which further reduces the value of his opinions. For all of these reasons, Dr. Rosenthal's findings are given little weight.

Tr. 21 (citations to the record omitted). Those reasons, and defendant's arguments in support of those reasons, are also insufficient.

First, defendant contends that the ALJ properly assigned Dr. Rosenthal's opinion little weight because it "did not contain a function-by-function assessment or otherwise set forth Plaintiff's specific deficits." Doc. #25-1 at 6. Again, however, that was not a reason given by the ALJ for discounting Dr. Rosenthal's opinion, and the Court cannot accept "appellate counsel's post hoc rationalizations for agency action." Snell, 177 F.3d at 134 (citation and internal quotation marks omitted). Nevertheless, for reasons already stated with respect to Dr. Shoup's opinion, defendant's argument is not compelling, because

the very nature of KLS does not lend itself to a function-by-function assessment.

Second, defendant asserts that the ALJ properly assigned little weight to Dr. Rosenthal's opinion because "Dr. Rosenthal's medical examination findings were completely normal." Doc. #25-1 at 6. Although the ALJ found Dr. Rosenthal's opinion to be inconsistent with the medical record as a whole, see Tr. 21, the ALJ did not specifically discuss Dr. Rosenthal's examination findings. Regardless, the defendant's statement, much like the ALJ's statement that the opinion is inconsistent with normal physical examination findings of record, again demonstrates a fundamental misunderstanding of KLS, which "raises substantial questions with respect to the weight given by the ALJ to the non-examining and examining medical sources." Mead, 2017 WL 1134393, at *2.

Third, defendant contends: "It also appears that Dr. Rosenthal had not had the opportunity to review Plaintiff's previous medical records. As such, the ALJ properly noted Dr. Rosenthal's assessment appeared to be based on Plaintiff's self-reported complaints." Doc. #25-1 at 7 (citations to the record omitted). Dr. Rosenthal examined plaintiff on January 4, 2017. See Tr. 378. On that same date, Dr. Rosenthal noted: "I will send for patients records." Tr. 380 (sic). However, Dr. Rosenthal's opinion, dated February 14, 2017, explicitly states

that his opinion "is based on my personal examination of Ms. Maltz as well as a thorough review of her medical records." Tr. 382 (emphasis added). Thus, defendant's argument that Dr. Rosenthal did not have an opportunity to review plaintiff's medical records is not accurate.

Fourth, defendant asserts that because Dr. Rosenthal (allegedly) did not review plaintiff's medical records, "the ALJ properly noted Dr. Rosenthal's assessment appeared to be based on Plaintiff's self-reported complaints[,]" and, thus, properly declined to afford controlling weight to Dr. Rosenthal's opinion. Doc. #25-1 at 7. The ALJ reasoned: "Dr. Rosenthal's opinions heavily rely on the claimant's subjective complaints and he failed to support his opinions with objective medical evidence, which further reduces the value of his opinions." Tr. 21. That statement again demonstrates the ALJ's fundamental misunderstanding of KLS, as he "effectively required 'objective' evidence for a disease that eludes such measurement. Generally, 'objective' findings are not required in order to find that an applicant is disabled." Rosato, 352 F. Supp. 2d at 396 (discussing vertigo) (internal citation and quotation marks omitted); see also, e.g., Soto v. Barnhart, 242 F. Supp. 2d 251, 254-55 (W.D.N.Y. 2003) ("Because of the unavailability of clinical tests for fibromyalgia, an ALJ cannot reject a physician's diagnosis of fibromyalgia on the grounds that it is

not supported by objective medical findings."). Further, to the extent the defendant asserts that Dr. Rosenthal improperly relied on plaintiff's subjective reports, "[t]he Second Circuit has stated that a patient's report of complaints, or history, is an essential diagnostic tool." Rosato, 352 F. Supp. 2d at 396 (citation and internal quotation marks omitted). Accordingly, defendant's argument on this point is not persuasive.

Last, as with Dr. Shoup, "there is no indication in the record that the ALJ considered the fact that Dr. [Rosenthal] is a specialist in deciding to afford limited weight to his opinion. Remand is warranted when the ALJ has not indicated what weight, if any, was assigned based on the fact that the medical opinion was from a specialist." Barrett, 286 F. Supp. 3d at 428. Again, the ALJ afforded little weight to the opinion of Dr. Rosenthal, who is "Board Certified in Sleep Medicine" and works for the South Florida Sleep Diagnostic Center, an accredited member of the American Academy of Sleep Medicine. Tr. 382. By contrast, the ALJ afforded "significant weight to the findings of the State agency consultants" who did not examine plaintiff and are not specialists in the field of sleep medicine. Thus, for the same reasons given with respect to the ALJ's consideration of Dr. Shoup's opinion, here too "the ALJ's failure to consider that Dr. [Rosenthal] is a specialist, particularly in light of the fact that the ALJ gave more weight

to [the State agency consultants'] opinion[s], requires remand."
Barrett, 286 F. Supp. 3d at 429; see also Estrella, 925 F.3d at
96-97.

Thus, for the reasons stated, the ALJ failed to provide
good reasons for assigning little weight to Dr. Rosenthal's
opinion.[7]

Accordingly, remand is appropriate because the ALJ failed
to provide good reasons for discounting the opinions of
plaintiff's treating physicians, based on what appears to be his
fundamental misunderstanding of KLS. See, e.g., Quinto v.
Berryhill, No. 3:17CV00024(JCH), 2017 WL 6017931, at *12 (D.
Conn. Dec. 1, 2017) ("An ALJ is prohibited from 'playing doctor'
in the sense that an ALJ may not substitute his own judgment for
competent medical opinion." (citation and internal quotation
marks omitted)). In light of this finding, the Court need not
reach the merits of plaintiff's remaining arguments. On remand

---

[7] Dr. Rosenthal examined plaintiff just one time before rendering
his February 14, 2017, opinion. "Generally, the longer a
treating source has treated [the claimant] and the more times
[the claimant] ha[s] been seen by a treating source, the more
weight we will give to the source's medical opinion." 20 C.F.R.
§§404.1527(c)(2)(i), 416.927(c)(2)(i). Thus, although Dr.
Rosenthal's opinion may not necessarily be entitled to
controlling weight, it nevertheless may be entitled to greater
weight than that assigned to it by the ALJ. Regardless, Dr.
Rosenthal's opinion should generally be entitled to greater
weight than an opinion rendered by a non-specialist physician
who had not examined plaintiff. See 20 C.F.R. §§404.1527(c)(1),
(5), 416.927(c)(1), (5).

the Commissioner shall address the other claims of error not discussed herein.

Finally, the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate for further consideration of the treating physician's opinions, as discussed herein.

## VI.  <u>CONCLUSION</u>

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner and/or Remanding the Matter for Further Proceedings **[Doc. #22]** is **GRANTED**, to the extent plaintiff seeks a remand for further proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #25]** is **DENIED**.

SO ORDERED at New Haven, Connecticut, this 16th day of August, 2019.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE